The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. All right, we're proceeding with the case of Interactive Brokers versus Rohit Saroop and others. And Mr. Edwards, we'll hear from you first. Yes, good morning and may it please the Court. Sam Edwards on behalf of the appellants. This case is a perfect example of why judicial review of arbitration awards is required to be extremely limited. This arbitration award was issued more than three years ago, and instead of appellants being paid their award, the parties have spent hundreds of thousands of dollars fighting the case all over again in court. This has undermined the whole purpose of arbitration, which is supposed to be quick, inexpensive, and efficient resolution of claims. And this is exactly what the Supreme Court and a line of hundreds of cases all across the country have warned against. Moreover, as a part of the limited review allowed for arbitration awards, courts are told that they are not allowed to attempt a full judicial review, and courts are required to give great deference to the arbitrators. In addition, all inferences that can be must be drawn in favor of confirming the arbitration award so as to make vacating an award exceedingly rare. The exact opposite is what happened in this case. The district court attempted a complete review of the arbitration, gave absolutely no deference to the decisions of the arbitrators, and then proceeded to make a number of inferences against the arbitrators to get to the strained outcome of vacating the award. Allowing the district court's decision to stand will significantly undermine arbitrations in the Fourth Circuit. As outlined in the briefs, appellants' position is the district court committed a number of reversible errors, including the district court abused its discretion in remanding the original award back to the arbitration panel to seek an explanation of the decision. The district court committed reversible error when it found the award was predicated solely on a violation of a federal rule. The district court also committed reversible error when it found the arbitration panel manifestly disregarded the law without meeting the stringent standards for manifest disregard. And even if the vacator was proper, the district court abused its discretion in remanding only interactive counterclaims and ordering those to a new arbitration panel. I'd like to start by talking about the district court's ultimate ruling, as that will help illustrate how far beyond the appropriate bounds of court reviewing an arbitration award the district court went in this case. Essentially, the district court's order has the effect of reversing and rendering against the appellant's claims. It grants the motion to vacate, which means the award is completely gone, but then only remands back for reconsideration interactive counterclaims. The court did not remand back the reconsideration of appellant's claims, effectively, therefore, completely extinguishing those claims. Interactive purposefully didn't address this in their response because it was so clearly indefensible, and in fact, interactive in its own pleadings has acknowledged that the proper remedy, if they were right on their motion, was to remand everything back to FINRA. Nothing in the Federal Arbitration Act or case law would allow the court to vacate part of the award this way and send back only one side's version of it. To allow that to happen would allow, effectively, the court to rewrite the party's arbitration agreement and supplant the court's view of the case as opposed to the arbitrator's. I address this first as the final example of how far the district court went outside the bounds of arbitration award review, but it certainly was not the only place, nor the first place. Let me ask you, how do you understand the court's failure to order arbitration on the plaintiff's claims? What do you think the court purported to do on those? It vacated the award, and then it only remanded back the one, so the effect of it, as it stands right now, is the appellant's claims no longer exist. Well, I see that, and the court did say that in its order, and I'm just wondering how you understand the district court's reason for not also referring the plaintiff's claims. I cannot explain that, Your Honor. The court gave no reason for it. Okay. In terms of the remand for the arbitrator for an explanation, as the court knows, we objected to that, and the court issued a lengthy remand order to justify that, and in that, the remand order, the court says, the arbitrators were at least arguably constrained or applying the contract and acting within the scope of their authority, so the court cannot vacate their decision. That should have been the end of the inquiry right there, and the award should have been immediately confirmed. Case law in this circuit and the Federal Arbitration Act require that if that threshold is met, the award has to be confirmed because the only alternative is to dig deeper, and that always is going to undermine the entire purpose of arbitration. Now, to support this authority, Interactive relies almost exclusively on this court's prior decision and Candletone Industries. However, that decision does not support remand, as it occurred in this case. Candletone, which was decided under the Labor Management Relations Act, not a private arbitration agreement, as we have in this case, only stands for the proposition of remand being an option if the award is unclear as to whether the arbitrators issued a ruling on an issue not properly before them. In fact, all of the cases that are cited by the court... Counsel, in terms of the district court remanding the initial arbitration back to the arbitrators, that's an abusive discretion standard. So if we accord the district court some discretion there, it then comes back with a second award. So, or a second award from the panel. So if you were to prevail on the second award, does any of this really make a difference? In this particular case, it would make a difference, but in terms of how arbitration... Let's say a letter, it would not. It would not. Okay. So, and just the same, if we were to prevail on the argument that this was an abusive discretion to send this back to the arbitrators for an explanation, it wouldn't be the first part, or the second award wouldn't matter either. So each one stands independent. But, Counsel, I gather you say that the first referral back was error and that we might be creating a bad circuit law if we suggested to the contrary. Is that right? Yes, and in addition to that, the suggestion that the circuit has already approved that is wrong because what the circuit has approved is sending it back in a situation where the issue is whether or not the arbitrators decided an issue that wasn't before them. So effectively, did they exceed their authority, which is a very different question than manifest disregard because that's a threshold court question. Was this an arbitral issue? And so that is appropriate to send back. And this court has said that's okay to send that back and make sure, did you decide an issue before you or did you decide an issue that was not supposed to be before you, which is a very different question of explain to me why you did what you did and so I can decide whether or not that conforms with the law. This court has never, that we can find, ever approved that and to extend the Cantleton case or the Bishop case to that we find would be very, very detrimental. And so because the court admitted in its remand order back that it didn't have a basis to vacate it, the option at that point in time was only to confirm the award. So the award did go back to the, the award came back from the arbitrators and it had fairly minimal changes that were in it. And in particular what the court focused on was really on the damages issue, not on the liability issue. In fact, the court effectively blessed the theory of liability that seems to be at issue in this case, whereas the court actually in the remand order said that if interactive allowed ineligible securities to be traded on portfolio margin, then the question was, why would this be the appropriate damages? It wasn't, that isn't an appropriate way for the panel to have ruled and that became sort of the issue. And so they came back and they answered the questions. The fundamental question that the court had was, why did you pick this date? And then the secondary question that the court had was, why didn't you give any offset as to how the accounts performed beforehand? I thought the court had a two-pronged approach. One, the main one is it thought that the arbitrator was relying for the source of its award on FINRA Rule 4210. And that 4210 did not present a viable legal base for making such an award. And on the damage, there was no damage theory. Of course, the damage raises a different problem. I mean, the arbitrators conceded that they did not have the evidence of profits and losses in the account. And so they just awarded the single dollar amount showing on a particular date, which I don't know what the right adjective is, but it's very strange. And that struck the court. So the court had a two-pronged approach, as I understand it. One, to conclude that there was no real basis in law for the decision. I think, to be fair to the district court, that's where it came out. Your Honor, I hear what you're saying, but if you read the remand opinion by the court, its focus is not on the 4210 issue at all. It doesn't mention it. The focus is on the damages, which is how do you get to this damage number. And so when the modified award came out, that's what the panel did is they're answering the question. They said, we came up with this number because that was the day that they were – that prior day they were completely in cash. And so that's why we picked this date. We didn't just pick it at random that the court seemed to be concerned about. Well, it's not picking a date. The court couldn't find a theory of damage where you can just pick a cash sum showing in an account and conclude that is damage. I think that's – you really have to give the court its due. Now, the question still is the legal consequence of that. But it strikes me that there's a lot to be said for what the district court did on that. I can't – all the profits and losses in that account could say that no damage was sustained, depending on what happened before. And it seems to me the failure of evidence is an acknowledgment by them. They don't have enough in the record to reach a conclusion. But anyway, that's what I thought. Understood. The point that the panel made was that to the extent that this was an issue, that what should have happened is there should have been a presentation from the other side on this, and they didn't present that. And therefore, the question then becomes – But it wouldn't be the other side. It would be the person asserting damages would have to start with that. I mean, the plaintiffs are claiming damage. And if they just put out a number and say our damage is the account balance on a given date, that's what the district court was troubled. I don't understand your argument on the 4212. The court spent its whole first argument and its main argument – I'm looking at JA 1063. The arbitrator's liability determination is predicated on a violation of Fenner Rule 4210. And then it goes on for several pages to demonstrate that and conclude that the arbitrator manifestly disregards the law in relying on that. It goes on for six pages or more, eight pages, ten pages. Yes, Your Honor. That's clearly the basis. You said they didn't address Rule 4210 at all. That was the main reason the court relied on it, to say that there was no foundation in the law for the award. Yes, Your Honor. I think I'm not being very clear. The issue is the remand order didn't address that liability issue. There's no question that the order actually vacating the arbitration award, that was the entire issue that was relayed in that. But in terms of what went to the arbitrators and said what do you explain yourself, it was not explain whether or not you used 4210. It was explain how you came up with this date. And so from there is where we go to the manifest disregard issue. And certainly that becomes a big problem in this because at first to get the manifest disregard, the court had to assume and make the inference that the arbitration panel ruled on this issue and this issue alone and simultaneously rejected all other causes of action. The problem is there's nothing on the face of the ward that says that that's what happened. That's an inference that's being drawn against the arbitrators, which is absolutely inappropriate. Rather than just make up a cause of action which was not pled, it's likely, just as likely and actually more likely that the reference to the federal rule was a factual predicate to an enumerated cause of action rather than its own standalone cause of action. As we outlined in our brief, those included breach of contract, promissory estoppel, negligence, misrepresentation, all of which this could be a factual predicate. The arbitrators seem to focus on the FINRA rule. To ignore FINRA rule by the panel would defeat the purpose of FINRA. That's what they said. Yes, that's what they said, but that is in reference to them denying the counterclaim. They don't give an explanation as to why they came to their conclusion. Again, just because the FINRA rule is relevant doesn't mean that they excluded all other causes of action. It could be a factual predicate for the same reason that it could be a part of negligence. There's no reason to jump to the conclusion that because they mentioned this rule and they thought that it was an important part of the evidence, an important part of their findings, that they therefore made it a cause of action in and of itself as opposed to being the factual predicate for an actual cause of action. That takes an ultimate inference from the court to say, you ruled on this and you ignored everything else, and they didn't say that, and therefore it would be inappropriate. But even if this court were willing to follow these inferences against the arbitrators, that's just the start of this manifest disregard, the very, very beginning of the analysis. Because if you get to that conclusion, then you have to go through the manifest disregard standards, which is there has to be a clear legal principle not subject to reasonable debate. The arbitrators have to show that they were aware of this legal principle. The arbitrators have to correctly understand the legal principle. The arbitrators have to find that the legal principle is applicable to this case, and then they have to consciously choose to ignore the law. This is a purposefully almost impossible test, as the law is abundantly clear that arbitrators' decisions cannot be vacated just because they get the law wrong, even if they get it grossly wrong. It's only manifest disregard if the arbitrators openly and purposefully thumb their nose at the law. And the Eastern District actually gave an example of this that it cited from an Eighth Circuit case where it said, what would be manifest disregard? And the answer was, if an arbitrator, for example, stated the law, acknowledged that he was rendering a decision contrary to the law and said that he was doing so because he thought the law unfair, that would be an instance of manifest disregard. That didn't happen here. In fact, nothing even close to that happened here. There's a lot of briefing, and so I'm not going to get into a lot of detail on the clear legal principle issue, but it is not a clear legal principle. And if it's not a clear legal principle, then you can't even discuss manifest disregard because it only applies to things where there are clear legal principles that cannot be reasonably debated. If you get past that hurdle, then this is where you have to have the proof element of it, which is you have to prove that the arbitrators were aware of this principle, that they understood this principle, that they found that it was applicable to this particular case. Again, there's no evidence of that. In fact, it's almost to the opposite of that. When they say that they can't ignore a FINRA rule, that is effectively them saying that their understanding is that they have to look at these rules. And there's a lot of reason why they would have that understanding because FINRA, and Amicus Briefs point out a lot about this, but FINRA basically tells arbitrators that they're supposed to be looking at these rules. And so at the end of the day, it's not a question that can really be met on the incredibly high standards of manifest disregard, even if you get to that. So the other issue we've talked about, the damages of the attorney's fees portion, that was another thing that bothered the district court in trying to understand what happened there. And this was one where the district court was adamant of, I need to see what the actual agreement is, where the underlying case and the underlying argument made on attorney's fees was that both parties had submitted the issue of attorney's fees to the arbitrators and that there is abundant law that says that it is therefore submitted and the arbitrators are empowered to rule on attorney's fees. And again, this is one place where FINRA tells their arbitrators that that is a basis to do that. Everyone agrees that both sides did that, and so it was completely appropriate. It would not manifest disregard of the law whatsoever to award attorney's fees. In fact, these were brief issues, and they're following the form and the contract that the clients signed with their attorneys. So with that, I will save the rest for rebuttal. Okay. Thank you, Mr. Edwards. Mr. Hurd? Good morning. This is Bill Hurd. The review of arbitration awards is, of course, very narrow. But even under narrow review, there are cases where the award must be vacated, where there has been a manifest disregard of the law, or where the award fails to draw acceptance from the contract. This court has said the award must be vacated and that is what happened here. Let me first turn to the question of the first remand. Because opposing counsel is wrong when he suggests that a remand is only appropriate where the issue is whether the arbitrator has exceeded their jurisdiction. That is not what the counting case says, which makes it clear, 10.594. When an arbitrator does provide reasons for a decision and when those reasons are so ambiguous as to make it impossible for a reviewing court to decide whether an argument draws its essence from the agreement, the court may remand the case to the arbitrator for clarification. And in Raymond James, the court said that the award is sufficiently inscrutable that it was reasonable to seek clarification of the basis of the award from the arbitration panel. And there, as here, despite its best efforts to discern some coherence in the award, the district court concluded it could not do so and remanded the matter to the arbitration panel. That is what happened here. Judge Crane could not figure out how could they possibly, under any theory of liability, come up with these damages tagged to the day before that last trade. And also, how do you find attorney's fees based on an agreement where you look at the agreements and there is no attorney fee provision in them? And so that is why the court remanded the case. Mr. Hurts makes the argument... Edwards makes the argument that the attorney's fees issue... He doesn't argue that it was in the agreement. He argues that the parties agreed to submit it to the arbitrator, notwithstanding its absence in the agreement. Is that... He is wrong about that, Judge Neumann. Sometimes when parties engage an arbitrator, their submission agreement will say something like, the arbitrator shall award costs including attorney's fees. And where the submission agreement says that, then that may be regarded as an independent agreement making attorney's fees available, whether or not the underlying cause of action would make them available. But we don't have that here. The submission agreements do not have that kind of term. You can see them at JA 183 to 89. And so you have to look at the underlying case. Was there something in the underlying contract that gave the cause for the right to attorney's fees? Well, if I can interrupt you, Mr. Hurts, when you look at the submission agreement, it says that the parties submit the matters in controversy as set forth in the attached statement of claim. And that does include a claim for attorney's fees, doesn't it? Judge, that is the argument, but it is bootstrapping. It completes two things. Well, if it incorporates by reference the claim, and the claim includes attorney's fees, why isn't that submitted to the arbitrators? Judge, there are two different points here. They're completing two things. The first question is, did the arbitrators have the jurisdiction to decide the attorney's fee claim? The answer to that question is, yes, they did. But that doesn't mean they can simply do whatever they want. It doesn't mean that they manifestly disregard the law of attorney's fees, or that they failed to draw an attorney's fee award from the essence of the contracts. Two very different things. Just because you say the arbitrators may decide something doesn't mean they can just make it up. On the attorney's fee award, as on any other contract issue, if they fail to draw the essence of their award from the contract, the award must be vacated. And because there's nothing in the underlying contracts that authorize attorney's fees for the appellants, that portion of the award, independently of everything else, must be vacated. Let me ask you just somewhat of a... a little bit of a different question. The district court ordered a new arbitration of the counterclaims and did not refer to the plaintiff's claims. What's your explanation for that? Very easy, Dr. Amaya. The plaintiff's claims, other than the general rule claim, which was manifestly in disregard for law, all of their other claims were decided against them by the arbitrators. I'll come to that point in a moment. And they never challenged that. And in our motion to vacate, we only moved to vacate those portions of the award that were favorable to the appellants. We never moved, nor did they, to vacate portions of the award that were unfavorable to the appellants. Let's talk about where the court... excuse me, where the arbitrators made that ruling. They made it... I believe it's down on page 706. It's on the page. They said, and I'll quote, any and all claims for relief not specifically addressed herein, including punitive damages, are denied, unquote. Now, throughout this whole case, down to the last minute, everybody has understood that the reference to claims for relief was synonymous with causes of action. And that's certainly how the district court read it. But now, for the first time in their reply brief, page 14, they say, well, no, and we'll paraphrase. They say claims for relief does not really mean causes of action. It really only means, like, forms of relief. What you might get if your claim is proven. That is not what the arbitrators meant. But more quickly to dispose of the point, there's no need to debate it because the opponents waived it. They did not make their argument below. Even if they had, they did not make it in that opening brief. They only make it in their reply brief, and that is simply too late. An issue first argued in a reply brief is not properly before a court of appeals. So any attempt on their part to come in at the last minute and try to reconstruct, reinterpret what that phrase meant, arbitrators put in that decision, is absolutely off the table. And so because the arbitrators rejected, denied every claim for relief, every cause of action, other than this 4210 thing, there was no point in vacating that. Nobody asked for it. We didn't ask for it. They didn't ask for it. So what goes back to the arbitrators is simply our counterclaim. Did we have defenses? We don't know. What they cannot do is raise claims that were denied by the arbitrators when they never challenged that denial. Now let me talk about the manifest disregard. Opposing counsel says there is no clearly defined legal principle here, but again, it is wrong about that. The key question here is whether there is a private cause of action for violation of a FINRA margin rule. This court explained in Terrace v. Burns, which we cite in our brief, that there is no private cause of action against the broker for allowing an investor to exceed margin requirements. That is the law of this circuit, and not just here. That's a premise that I think in the cases that are cited, at least in your brief and by the district court, all apply to cases that are litigated in court. I haven't seen any cases that apply that principle in arbitration, where the parties can make their own contractual arrangements about what type of claims are available. So, do you have any cases that apply this principle in an arbitration proceeding? Judge, the answer to that question is no, but it makes no difference. The law is the law. Is there a private cause of action for violating a FINRA margin requirement? The answer is there is not. There is not. And the arbitrators don't get to make up one just because the appellant said they should. That is exactly the kind of own brand of industrial justice that the Supreme Court and this court have said are inappropriate. So, the cause is crystal clear, not only by the Keras case, which I'm surprised, you know, they never mention it at all. The cause on the Keras case, there is no private cause of action for violating a margin requirement because many other courts have said the same thing, besides them in our brief. The principle of law is clear. Then the question is, okay, did they disregard that principle? We told them about it. They knew about it. Clearly in their second award, if not in the first, we thought in both, but in the second award, they clearly understand what it is that we're getting at. And they reject it. They say, oh, no, if we don't, essentially they say, if we don't allow private cause of action, then there'll be investor suicide. Well, they're just making something up. That's the own brand of industrial justice. They can't do that. So, they did rely. Exclusively. Counsel? Yes, ma'am. Could there be a contract claim here? No, Judge Blount, for two reasons. Number one is that all claims other than the Federal Claims OECD claim were expressly rejected. Number two. I'm sorry, I can't hear you very well. Can you put the microphone up or speak? I'm sorry, two reasons. One, a lot of answers, no. One is because all claims not expressly granted or rejected and explaining why they awarded found in favor of the appellant. They said nothing about contracts. Number two, the cause under the law. I'm sorry. The arbitrator doesn't have to say anything about that. The contract said all transactions are subject to rules and policies of relevant markets and clearing houses and applicable laws and regulations. That clause could incorporate the FINRA rules, couldn't it? Your Honor, not when the law is that these rules exist for the benefit of the broker not for the benefit of the investor. Oh, but you're familiar with the fact that parties can contract any way they want to, right? They can assume obligations they are not otherwise having under the law. That's certainly correct, but there's nothing to indicate that these arbitrators did anything other than decide the case based on a freestanding FINRA rule 4210. Well, that's why I just asked you if it can be a breach of contract rule since I read you the provision in the contract. No, Your Honor. It fits very nicely into a breach of contract clause. If the arbitrators had said that, then I don't think we'd be here on this issue. But the arbitrators sometimes, counsel, you've had other arbitration cases, sometimes the arbitrators don't say anything. They just award a sum. Your Honor, if they had said nothing about the reason for the liability of filing, then you'd be absolutely right. But when they start to explain themselves, the explanation has to make sense. And here they explain themselves. Counsel, it has to make sense, but it doesn't have to set out their theory of the award, which is what you seem to think it does. It just has to be possible. I mean, I almost really can't believe that you're making these arguments since the law in the court circuit on arbitration is really, really clear and really seems to me to not allow much room for the arguments you're making. Well, Your Honor, we respectfully disagree with you on that. The law is clear that a FINRA rule, margin requirement cannot provide a private cause of action. We think it's clear that's what the arbitrators did. Where is the court circuit law that says that people cannot contract to say that a violation of FINRA will be a violation of their contract? What court circuit law says that? Or any law, really? Your Honor, you and I both know there is no law that says that. What we have to look at is what the arbitrators said in their opinion. Particularly the modified award. And there's nothing in it that suggests they were relying upon any kind of contract theory at all and they rejected everything other than what they expressly approved. And what they expressly approved was... If I was... Let me read that again. In your claim for release, not specifically addressed herein or denied. Specifically addressed. In that case, the arbitration agreement provided that a reasoned award was not required. And as I understand the record, no party asked for a reasoned award. That's certainly correct. But that doesn't mean that once they start giving an explanation, that the explanation should not be understood as their actual reasoning. But let me flip over a moment to damages. Because even if you were to find that there was sufficient assuring liability, what about damages as a causation principle of law that was called to their attention? There's no causation here when you peg the award to this very last round of winnings. In other words, the damages from the use of portfolio margins, that's the theory. The damages from the use of portfolio margins cannot include the money they won by using portfolio margins. And what the arbitrators did was essentially say, well, we can't find in the record any other way, any real number. We can't find how to sort out the damages from the use of portfolio margins and the winnings from the use of portfolio margins. So we're just going to go listen over here again. Well, that's the appellant's problem. They're the plaintiff's. They have the burden of proof. Now, I know they say it's an offset, but it's not an offset. An offset is what you have when the plaintiff also owes the defendant some money. These appellants did not owe interactive brokers their winnings, so it's not an offset. It was their burden. Plus, as we also point out, they could have made the same number of trades using Reg T margin. Sofits could have made, actually, all but 82 of his 2,900 final trades, and the troops could have made all of them. So that's another causation problem. The only measure of damages here that you could possibly look at the evidence and see, given what the arbitrators have said, is, okay, what was their original investment, what did they put in, and what did they take out? They put in how much? The troops put in 1,500. Excuse me, 150,000. The troops put in 150,000. Back to Sofits put in 100,000. Troops took out 30,673. Back to Sofits took out 50,000. We discussed that, page 10, by brief, but not one. They don't deny it. If there's any damage to be awarded in here, that is the only number shown by the record, given the arbitrator's position, only number that you can go with. Now, back to attorney's fees, even if they win somehow on the damages, the liability is no basis for attorney's fees. Contract doesn't call for it. Their award does not draw its essence from the contract, and you can't bootstrap that in to saying, oh, because they were authorized to adjudicate claims, they can just do whatever the claimant may have asked for. That's not the law. That's not their disregard. By the way, they cite two cases they say lets them do that. One of them is the case decided by the Eastern District, Skip Kirchdorfer. They cite that in their reply brief, page 24, but if you read it, the court upheld an arbitration decision awarding attorney's fees there, not because of the submission agreement, but because the underlying contract in that case expressly authorized an award of fees to the prevailing party in any arbitration. And they also cite a federal district court case from New York on page 23, Houghton is the name of the case. But that case doesn't really provide much of an analysis. It simply relies upon a, quote, New York Supreme Court decision. But, of course, in New York, that's the name they give to their county trial courts of record. So a county trial court of record is a mighty trail read on which to rely for their bootstrapping theory. I think that bell means I've run out of time. We ask that you affirm the decision below. Thank you. Mr. Edwards? OK. Can everybody hear me? Mr. Edwards? Yes. Yes. Proceed. OK. First, on the remand issue, there continues to be this reliance on the Camel Tone and the Bishop cases as saying that that allowed what the district court did in this case. But if you read those decisions, that is not what they say. In Camel Tone, what counsel read to you was the statement that if it didn't draw its essence from the agreement, then that might be a reason. But, again, you have to dig a little deeper in there because what the real question was is that they decide something outside of the arbitration agreement, meaning that it wasn't an arbitrable issue. That is an appropriate place for the court to then jump in and take action because you don't have to question the arbitrator's ability to decide on the arbitration, the issue that was arbitrable. But the issue is you're not allowed to decide on that. The Bishop case is the exact same. In this case, the arbitration agreement directs the arbitrators to resolve disputes that arise out of or relate to the agreement. And the agreement doesn't make a provision for attorneys' fees. And while the claim does, the arbitrator would theoretically should deny the claim because there's no provision in the arbitration agreement for attorneys' fees unless you have some new theory on that. The notion that the claims are submitted to the arbitration when the claim is trying to allege a dispute arising out of or relating to the agreement, it seems to me you still have to fall back on the agreement, don't you? No, Your Honor, you don't for two reasons. One is because there's ample authority out there, and the district court even acknowledged this, that says that when both parties submit the issue, it becomes a bilateral agreement. Secondarily, you have... Both parties could agree to submit the issue, but that doesn't agree that both parties agree that attorneys' fees are appropriate. In other words, one party claims attorneys' fees and the other party says, well, go ahead and decide that. But the footnote to that is the responding party basically says, well, there's no provision in the agreement to provide for it, that's our position on it, and we'll present that to the arbitrator. But the arbitration agreement would still, unless they modified somehow the agreement between the parties, and I don't think they purported to do that. Anyway, that's where I'm troubled on that. Understood, Your Honor. And this issue was actually addressed very detailed in the underlying case with the district court. So this arbitration agreement applies Connecticut law. Connecticut law has a provision that says that when you have a consumer contract and it calls for attorney's fees for one side, it has to apply to both sides. Does it allow you to insert an attorney's fee just for the superior party effectively when that happens? And so we addressed that and dealt with that at the district court, and if you read the district court's remand order, the district court acknowledges there was a basis in the contract under Connecticut law that would have allowed this, and then the question went to, explain to me, panel, how you came up with these numbers. So even if you looked at just the agreement and you didn't consider the bilateral argument in terms of both sides submitted to the arbitration panel, that agreement actually does ultimately provide support for attorney's fees to the appellants because Connecticut law says if you're going to have it in there for you, it comes for both sides. So there is a basis for that. Counselor, let me ask you about Mr. Hurd's argument that at the end of the second arbitration award, the arbitration panel says that any and all claims for relief not specifically addressed herein are denied, and his contention is, for instance, that the breach of contract for violating the FINRA rules, et cetera, that you made was denied by that language. What's your response to his argument? He is completely misreading that. To be frank with you, panel, this is a form that is filled out by FINRA, and so if you looked at the thousands of awards on FINRA's database, you would see this exact same thing in every single one of them, but even taking it as if the arbitrators meaningfully put it in there, it says claims for relief, and to clarify what claims for relief meant, it even says including punitive damages, and so that is on 706 of the Joint Appendix, but if you actually want to figure out what it doesn't include, you can actually look up two more pages on 704. It distinguishes causes of action as being something different. It says claimants assert the following causes of action, not claims for relief, but causes for action, and that's breach of contract, promissory estoppel, violation of state security, all the various causes of action that we pled, and so it doesn't incorporate. The claims for relief does not incorporate the causes of action the way that Interactive is trying to suggest that it does. On its face, it's clear from the award that it doesn't. All right. Thank you, Mr. Edwards. I want to express to counsel our appreciation for the arguments and especially for the willingness to make them in this medium. It's difficult times, and we very much would prefer to be in open court and to hear counsel, and as you know, it's our custom to come down from the bench after each case and greet counsel shaking their hands. That, of course, is not possible, but we still want to recognize that that's our greeting to you right now. It's a personal greeting, and thanking you for giving the argument and participating in the process. With that said, we will adjourn sine die. This honorable court stands adjourned sine die. God save the United States and this honorable court.
judges: Paul V. Niemeyer, Diana Gribbon Motz, G. Steven Agee